This case number 417-0200, The People of the State of Illinois v. Don Trayl Wright. For the appellant, we have Miss, oh, Philippi, is that? Good morning, Your Honors. My name is Emily Philippi, and I represent Don Trayl Wright in this case. This morning, I will be arguing all three issues raised in the brief, if time allows. When Mr. Wright was arrested, he was only three houses away from the gun that he was convicted of possessing. He was not seen in present physical control of the gun. He was not seen holding the gun, throwing the gun, or controlling the gun. According to the state, the only evidence connecting Wright to the gun was the fact that it was in his flight path where he was running, and that he was manipulating his waistband as he sprinted and jumped over six foot fences. This evidence is insufficient to establish a non-reasonable doubt that Wright possessed the gun. There is no act of personal dominion here. Again, no one saw him holding the gun, no one saw him throw it away or conceal it. Counsel, let me ask you this. Can actual possession be proven by circumstantial evidence? Well, the state hasn't cited any cases that specifically state that actual possession can be established by circumstantial evidence. Are you aware of any cases indicating it cannot? No. No, Your Honor. The cases cited by the state, they cite to Alexander, they cite to Scott, they cite to Howard, which makes it clear that the defendant must be seen throwing the item away for thief and control of the item, for it to be an act of dominion such that it can establish actual possession. And actually in four, the third district says that it's a continuum between actual possession and constructive possession, based on the relative immediacy of this control. Regardless of whether it's actual or constructive possessions, however, the defense requires knowledgeable control of the item, which we don't have here. Nothing shows that Wright moved over that. Well, if he threw it while running, if the jury decided that he threw it while running, how is the knowledge missing? Well, Your Honor, the gun was found 12 to 15 feet where Sean Russell was. No, I understand that, but my question is, if the jury determined, based on the evidence, and it would be circumstantial, the observation of him manipulating his waist area, the gun being found in his flight path, and I believe the evidence indicated that the gun was found past where another defendant who also ran partially that way, if the jury determined that they established that, then how is that not knowledge? Well, because it's unreasonable. I mean, in this sense, in this case... Well, I guess I'm saying, can a person throw a gun and not know they had a gun? No. Okay. But in this case, the evidence doesn't circumstantially support that finding by the jury. As I said, the gun was found 12 to 15 feet from where Sean Russell was arrested, after he tripped over a fence. And this area, then, was not in Wright's exclusive control. And notably, Officer Shweska testified that he didn't see Russell. Officer Shweska did not see Russell at all times during the chase. He wasn't asked that question, and he didn't testify to that. In fact, it would have been physically impossible for Officer Shweska to have done so. He kept an eye on Russell at all times during this chase. Then it would have been the same if this had been a nice-sized packet of drugs, and the packet of drugs was dry. I mean, that's another little bit of evidence, isn't it, that the gun was dry? It's evidence that the gun was dry. But again, in this case, we have Sean Russell. He was right here. And Officer Shweska, again, didn't have eyes on him the whole time. And even though he didn't see Russell throw anything immediately before he fell, there's no evidence about whether Russell threw anything after he fell. And there's no evidence that Shweska had eyes on Russell the entire time between his fall and his rest. So it's just as reasonable from your perspective that when Russell fell, or just before he fell, or after he fell, he could have pitched the gun 12 to 15 feet in front of his path. Right. Or it could have been the momentum of him jumping over a six-foot fence and tripping could have propelled the gun. I mean, the fact is, there's no exclusive control over this area. We're right. And we do have Russell here. And he was also running and jumping and sprinting at the same time. Now, Shweska did testify that Russell didn't do anything with his hands or throw anything when he fell. Wasn't that his testimony? Right. He said immediately before he fell, he didn't do anything. But he also testified... When he fell or immediately before both. Partially when he fell. Well, my question was, didn't Shweska testify that Russell didn't throw anything when he fell? And then your response was, correct, immediately before he fell. So I don't know if we're making a distinction here, or... I will have to go back and check the exact language that he used. I believe it was before he fell. Immediately, he saw anything immediately prior to Russell's fall, and he said no.  Okay. Okay. But he also testified that he didn't see Russell do anything with his arms at that point either. So, Wright's mere presence, you know, running past the spot where the gun was later found, is not enough. There has to be something... Well, did Russell make it to the location where the firearm was found? He was 12 to 15 feet. So no. He was, but he hadn't quite gotten enough. Okay. Wright was the only one who ran past that location. But there has to be something to connect Wright to the gun to establish this knowing possession. In Salem's, the appellate court vacated the defendant's conviction where he walked out of a house in which the gun was later found. The court noted that mere presence or access to the area where the gun is found is not enough, because that defendant there was a visitor. Officer Shvetska testified here that Wright's... Oh, sorry. In the same way that mere presence in a house is not enough to establish knowing possession, Wright's act of running past the gun is also not enough. It's similar to being a visitor in a house. Officer Shvetska testified that Wright was naked in his waistband. I'd like to compare, to contrast this actually, to the case of People v. Pete, where the officer provided much more detail about what that defendant was doing with his waistband. He said he was digging in his waistband as though to remove something. And that's significantly more detail than we have here, where all Officer Shvetska said is that he was manipulating his waistband. Also, there was no one else present in Pete. Where here we have Sean Russell, who was 12 or 15 feet away. And in Pete, the gun was, just like in this case, the gun was found in someone else's land. But the state there took the time to establish that the gun wasn't there beforehand, as the state brought in the homeowner to testify to that fact. This case is more like Wright, where the defendant was not found to have possessed the gun, even though it was found underneath his body, actually touching him. But the state could not establish that he had immediate and exclusive control over the area. No one saw it in his hands. All the state had was his mere presence in the basement with other people. And here, too, there's no forensic evidence of prints or DNA that connects Wright to the gun. Because if the state failed to establish that Wright possessed the gun, we don't have reason to move out. This court should dictate Pete's conviction. Alternatively, trial counsel was ineffective for failing to make suppression of Wright's criminal history as part of the motion to suppress. The police lacked probable cause to arrest Wright and had the information obtained after his arrest to be suppressed. The outcome of the trial would have been different because the state would not have been able to establish an element of defense. As a trial court determined, this was clearly a seizure. There were numerous officers present, at least ten. Officers just said, do not come here if you've done it, Wright. Wright was handcuffed. Officers repeatedly screamed at Wright to get on the ground. He came to his confines and was held. Under Mendenhall test, this was a seizure. But it was unlawful because the police lacked probable cause that Wright committed or was committing an offense. In St. John v. New York, the United States Supreme Court noted that flight plus form of actions can establish probable cause if the officer has specific knowledge relating the suspect to the evidence of a crime. Here we have the flight, but there's nothing specifically relating Wright to a crime. Notably, the manipulation of his waistband is nonspecific. As I said, officers who asked about it didn't describe it any more than saying that he was manipulating his waistband. As such, it fails to rise to the level of probable cause that any crime is being committed, especially when you consider that Wright was sprinting and jumping over six-foot fences, and there was no evidence that this was a high-crime area either. However, the fact that the police executed an arrest warrant for Ravon Mendes does not establish probable cause for Wright. The police here had a hunch, nothing more, that Wright might have been Mendes because he came out of a house that they were surveilling. It was the state's burden at the motion to suppress to justify the warrantless arrest, and they did not establish that the officer had probable cause to believe that Wright was Mendes. There was no evidence that Wright resembled Mendes or matched the description of Mendes. The police exploited Wright's unlawful arrest to obtain his criminal history, which should be suppressed as the fruit of a new arrest. This was purposefully flagrant. It was a round-of-all-out situation. I've been at this business a long time, and I've never before encountered the notion that a motion to suppress should be granted to suppress a person's history. What's that all about? Well, this isn't the first Illinois case that's addressed it. Up in the first district, there's a People v. Lopez case that has also looked at it. But it stems from some federal cases that deal with immigration, generally talking about suppressing information about the fact that results come first. Well, I'm having trouble understanding how this is the fruit of the poisonous tree. I mean, the person is who he is, isn't he? It's not the whole idea about suppressing a personal history. How does that work? Well, it's because they obtained it by an exploitation of the arrest. Until they have his criminal history or other information about him, he hasn't committed a crime here. Well, no, he's committed the crime. They just didn't know about it. Well, I mean, until they have, in this case, a criminal history found of abuse, or find out maybe that someone is underage or doesn't have a court card or things like that. It's not a crime until they have this information. Well, maybe this is a philosophical discussion, but when a felon is in possession of a weapon, he's committing the crime. He is committing the crime. The question is, who knows it? But to argue he hasn't committed a crime because no one knew it, because the tree falling in the forest didn't make any noise because no one was there to hear it. Correct. But it's, again, as I was saying, the police didn't have probable cause to arrest him here. So at the time that they arrest him, the police don't know. They're just rounding him all up. And that's why this is purposely flagrant. They're just arresting people without any probable cause and kind of sorting it all out later. So if we were to determine that he was committing the offense of resisting or obstructing a peace officer, would there have been probable cause for his arrest? Well, you can't find that conclusion because it wasn't a lawful arrest. You can only use the resisting of Section 311 to get probable cause for fleeing a stop if it's a lawful stop, if it's a lawful ferry stop or if there's actual probable cause for it. But since there's no probable cause here, nor was it a lawful ferry stop, you can't use flight from that to say he's resisting and violating Section 311. You find that in the Johnson case and in the Schiff case that they talk about how it has to be from a lawful seizure, a lawful stop that you actually can get. So you agree that if it is a lawful stop, then there is probable cause? If it is a lawful, if there's probable cause, or if it's a lawful ferry stop and you run from that under Schiff and Johnson, that must now be a probable cause to arrest him or violate Section 311. But I'm maintaining that that's not going to happen here just to be clear. The police arrested Wright solely for investigative purposes and acquired his general data about him, and they held him in custody while they looked for probable cause to do so. Because the state would not have been able to establish the elements of unlawful possession of a weapon by a felon without his criminal history, counsel is ineffective for failing to include it as a suppressive inclusion in Washington's request. Finally, Wright's 13-year sentence is excessive. The legislature determined that a 3- to 14-year sentence is appropriate for the attempt of unlawful possession of a weapon by a felon by individuals with prior forms of felonies. Here, Wright has a prior felony. Wright's 13-year sentence was excessive and an abuse of discretion because it is manifestly disproportionate to the nature of the offense. This was not one of the more egregious unlawful possession of a weapon by a felon cases, warranting a sentence one year shy of the max. Although carrying a loaded gun is dangerous, Wright was never seen in actual physical possession of this gun. He's not brandishing it. He's not threatening to use it. He's not pointing it at anyone. In fact, he's running away from people, not towards them. Counsel, was this issue raised in a motion to reconsider sentence? No, Your Honor. I'm sorry, Your Honor. I just blinked. You're talking about the sentence, and I'm asking whether or not it's been included in the motion to reconsider. And so you're asking for a plain error review? Right, right. Counsel did not file a motion to reconsider sentence. So I argue that this should be reviewed under the substantial rights prong of plain error. Or because federal counsel is ineffective if they don't file a motion to discuss. Counsel is ineffective when they don't, in a particular situation like this, when they don't properly preserve an issue for appellate review. And here, again, this case is one year shy of the maximum, and he was never actually seen touching this gun. Also, the trial court abused its discretion when it referred to his criminal history during sentencing as past violence. Except for the home invasion, which was an element of the offense, so it could not be used as an aggravating factor as well, rights prior to convictions are all non-violent. For these reasons, I ask that you either vacate rights to conviction, or move on for recess. Thank you, Counsel. You'll have additional time, won't you, by the way, if you so desire. Ms. Brooks? As long as you speak up, you should be good. Thank you. Thank you, Your Honors. May it please the Court and Counsel, my name is Allison Cage Brooks, and I appear on behalf of the people. With respect to the issue of ineffective assistance found to seek suppression, because it is raised as the ground of ineffective assistance, the defendant has the burden of showing both unreasonable assistance, in other words, that this was not a strategy, and prejudice. And they fail to do so on record. One thing that happens at trial is that the defendant actually stimulates the defendant's felon status, rather than objecting to the admission of that evidence on a Fourth Amendment basis. And that serves a strategic purpose, by keeping the nature of the felony, the home invasion, away from the jurors, when he is charged with possession of a weapon. So that is an important strategic reason to stipulate to that. And also by that point, counsel had already litigated and lost, in the trial court, the issue of whether there was reasonable suspicion for the stop and probable cause for the arrest. So it would make no sense for the trial court, or for the trial counsel, to try to challenge that issue, forfeiting the strategic benefits of stipulation, in order to try to conserve this burden of appeal. Particularly when the record does not show any sort of exploitation of a flagrant illegality, in other words, that they would have to develop some sort of evidence, which does not exist in this record. But they're asking for outright reversal, here on the ground of ineffective assistance, without the state ever having had an opportunity to litigate the question of why and how the police ascertained his identity and his criminal history. Because without evidence to show that there was a purposeful, flagrant arrest, for the reason of trying to determine his identity and criminal history, to charge him with the offense of possession of a firearm as a felon, then this is not exploitation under the long-sum rule, which deals with the roots of the poisonous tree. The defense position initially seemed to be that, well, this was learned but for, would not have been learned but for illegality. Well, that's not the standard. The standard is exploitation. And that has to be developed at an evidentiary hearing, of which there was no evidentiary hearing on this, and the state never had a chance to litigate it. So this is the type of thing that must be essentially preserved for post-conviction review, if the defendant has a viable claim to preserve for post-conviction review. But I think the state's position is that this should just be rejected outright, because there was, in fact, probable cause for the arrest. And then the state's position was that this is the violation of 31-1, which is the obstruction of a peace officer's statute. And it essentially gets down to this. It's the officer's handcuffing or the apprehension of the, and ordering him to stop, I guess, more specifically, ordering him to, the command for him to stop. Get on the ground and stop. That was the command. Is this an authorized command? Of course, it was not. He did, but the question is, was the officer making an authorized carry stop at that moment? Well, of course, prior to that, we have the defendant as part of the line of five people looking around, heading a few doors east into a secluded area, behind a garage, between a fence, in someone else's backyard, huddled down. And upon the approach of a police officer who announces police, they all flee. And the defendant is one of these people who is fleeing. And not just fleeing, headlong flight, which is the requirement in this sort of area, to scale fences, including a tall, privacy fence. So this is headlong flight at the announcement of the presence of police, after the very suspicious and unusual behavior of five grown men huddling behind someone else's garage in the middle of these backyards. Exiting the home in single file. In single file, looking around. I'm not relying on the fact that this was a part of the drug investigation surveillance, but that part can be considered as part of the reasonable doubt issue, because the police did find the defendant's ID card next to his scale. And so he has some potential in here involvement. He was not convicted of any drug offense, but that part of evidence can show, as part of the evidence dealing with the inference that a person involved in heroin trade, for example, is more likely to be armed with a firearm, and therefore that constitutes one more piece of evidence on the scale. But with respect to the reasonable doubt argument, the gun could not have come for Russell. So, I mean, they're looking for reasonable doubt. To reverse this court would have to find the reasonable doubt remains, despite revealing evidence in the light and most favorable of the prosecution. According to what you were saying, it's those circumstances, the defendant's flight and being ordered to stop, get on the ground, that then constituted resisting arrest? Asserting a peace officer, which is a statutory violation in Illinois. Under the Holdman case. So, at that point, because of that direction, and his continued flight, now they have probable cause to arrest him for that offense? Yes, police would objectively have probable cause to arrest him for violating 31-1. It does not matter in Holdman whether he was actually prosecuted for that. He was never prosecuted for that offense, does that matter? No, under Holdman, that was the point. They were arrested for armed robbery, and they said in Holdman, that the fact that formal charges of resisting obstruction was never made does not detract from our conclusion in light of supervening events concerning armed robbery charges. So they find the weapon, and they can charge him with that. They don't have to charge him with obstruction. Is the record developed as to whether Jayvon Mays was one of the five men who exited the house? That's the person that the apprehension agent was there to pick up, apparently. Is he one of the five, or does he come out later, or is the record developed on that? I don't remember specifically, but I do remember thinking that one of the things that the officer was thinking about is this could have been Mays who was wanted when five people fleed, not all different directions, because I see two went with one other person showing Russell, but they're going in multiple directions, and they were behind the fence when the officer walks up to the opposite side of the fence, so the police have no opportunity to really ascertain which of these persons was Mays. And so when the defendant goes behind 64 West Berkeley out of sight, at that point the police don't know that Mays has been apprehended yet, and it is still possible that that person they are chasing behind 64 West Berkeley out of sight could still be Mays, and that he's actually apprehended in front of a different house later on than this defendant is. So there's still a possible that it's the good faith belief that this person they're chasing, that is this defendant, could have been the person wanted on the warrants. What you mean is they don't need him. If it could have been, that's the probable cause. That's the authorized act for the Terry Scott or the Evans Scott, right, and as the defense counsel admits, if this is not, if this is an authorized act and he's violating an authorized act by fleeing, which constitutes a physical act of obstruction, then he can be subject to probable cause arrest on that offense. Yes. So the other evidence here is sort of like the evidence that was in Pete, which is that there was some sort of testimony that the gun was not on the porch earlier in that day. Here is a different form of evidence, but there's still some sort of evidence to show that the gun was not on the patio behind 64 West Berkeley earlier because it had drizzled that morning and there was no rain or precipitation lying on top of the gun. So there's a reasonable inference here that this gun had been more recently deposited between the time of the morning drizzle and the time of the pursuit, which is when the police found it. Counsel, isn't the state's position that the defendant in this case possessed this constructively or actual possession? What is the position of the state? The state's position explicitly is this is an actual possession case, not a constructive case. The Merriweather case sort of talked about constructive possession. It might have been, I think, somebody was hiding in a patio situation, the gun was nearby, and I think this court found constructive possession. But I think at this point it's an actual possession case. He is actually possessing it prior to and including to the moment in which he discards it. If the state can prove circumstantially obviate that he had the gun in his waistband while he was manipulating his waistband, and then while he's at the moment, seconds, he's out of sight of the police, discards it onto someone else's patio, which reasonable inference is that somebody would have stored a loaded gun among small shrubs in the backyard patio. So it's not reasonable now that that gun could have been there, particularly when there's no precipitation on top of it after the morning drizzle. So does Howard stand for the proposition that the person must be seen possessing the gun, as opposing counsel indicates? I'm not sure. The answer to that question is that even if that's the case, the state's response is circumstantial evidence in Illinois is sufficient to support a conviction. So essentially, at this point, we have to overrule that very sound proposition that a case can be proved circumstantially. And if a person is proved through circumstantial evidence, such as like prosecutor state closing arguments to juries, if there's footsteps in the snow, we can infer that the person walked through the snow. We don't need to see them walking through the snow. We can infer it based on the evidence that we can see. And so here, if it is circumstantial, then the conviction can still be affirmed, even despite the claim that this evidence is merely circumstantial. It is not a valid argument to say that an actual possession case has to be proved through actual eyesight by a police officer who is trying to handle a gun, because that would essentially overrule the circumstantial evidence is sufficient to uphold a conviction rule. And I'm not sure that there's any reason to apply a different rule in this sort of context. As long as the evidence is sufficient to remove reasonable doubt, then it doesn't really matter whether the police officer shot with their own eyeballs or not, because the proof is still proof. It's still proof you have a reasonable doubt, even if it's not through the officer's own eyeballs. So the other source of reasonable doubt that I emphasize is that, essentially, this could have come from Sean Russell, a person who never made it this far, but the proceeding officer saw Russell trip on the fence and observed that fall and ascertained that he hadn't thrown anything. And for the gun to get 15 feet away from that moment where he was arrested on the spot after he tripped over the fence, there's no way Russell could have done this. And as I said, it's unreasonable. It's not even a reasonable inference that this somehow could have been stored by any occupant at 604 West Beardsley. So looking at the evidence in light and stable of the prosecution, as this court must, there is no remaining reasonable doubt, or any reasonable doubt here, that would require a determination to be reversed outright on the ground of the lack of proof you have a reasonable doubt. And so it's not necessary to show the patio was in the defense's exclusive control, because this is not a constructive possession case. And some of the cases, I believe, are where if there's not actual possession, proof of actual possession, then they look at, or there was never any argument of actual possession, so they looked at constructive possession. We're not asking this court to even consider constructive possession because it's an actual possession case. He was carrying the gun during the pursuit and discarded it or dropped it somehow, and these are acts of actual possession. He wasn't just storing it somewhere under an area in his control. And that's what distinguishes that sort of issue. And with respect to the sentencing issue, the record does not show why the defense attorney refused to file without filing a motion to reconsider sentence. And even the record doesn't show that. This court is not allowed to sort of presume that counsel acted unreasonably because that would be in violation of Strickland's presumption that counsel did act reasonably. Well, what explains it? How do you – and it's an ongoing problem. Being a criminal defense attorney is a tough job, but one of the things you think we're able to understand goes with it. If you lose a trial, file a post-trial motion raising various issues of which your client is not happy, like, I don't like this sentence. Okay. And how do we get the attention of counsel to do this appropriately? Well, I think maybe the cases might say something about a duty of consultation with the defendant and that duty is complied with and the defendant elects not to proceed with the motion to reconsider sentence. I mean, that's the defendant's sort of – it's not totally his choice if it's still something that counsel should decide to do. Of course, counsel still must act reasonably to comply with Strickland, but the point is this is not necessarily something that is totally up to the defendant's decision. But the counsel's conduct can be reasonable when informed by the defendant. If the defendant's told the counsel, I don't like the conditions in this jail, I just want to get on the APO, I don't want to have any risk of getting stuck around in this jail waiting on the motion to reconsider sentence or whatever. I mean, we don't know what was said here. We don't know whether the defendant even himself had directed his attorney to proceed in this manner. We just don't know. And if we don't know, we can't presume counsel would be offended. And so that's why it's sort of the thing that it's not just an automatic exception where counsel never files the motion to reconsider it. We're just going to have simple disregard of that and assume counsel – Well, I suppose along the same lines, it's conceivable, although pretty unlikely, that counsel could have said, Well, we're going to be appealing this. Do you want to appeal the sentence? And the defendant would have said no. I suppose that's – normally it's the defendant's right to decide whether to appeal or not. But with regard to specific issues, is it still his right? Or even if it isn't his right, I guess defense counsel could certainly consider whether the defendant wants to appeal or not. Right. I believe it's the defendant's right to decide whether or not to appeal. What about specific issues on appeal? I don't know the answer whether that's incumbent because usually there's some sort of discretion strategy amongst bringing issues for appeal. But there was a determination to appeal in this case. So I guess the argument is we don't know whether the defendant wanted to appeal the sentence? If he had instructed – right, because he got no, and if he had instructed his attorney to preserve issues for appeal and his attorney just failed to do so or didn't know it was necessary to do so or something, then he could have a good argument, perhaps for, like, post-deviction. But without that in the record, this Court cannot presume unreasonable assistance when it strictly mandates that counsel be presumed to have made all decisions and exercised a reasonable professional judgment. So it turns strictness presumption backwards, and I would presume ineffectual assistance on this record would just simply not know why counsel failed to file a motion. So your argument is to raise this question of sentence. Counsel tried to do it alternatively because there was no motion to reconsider sentence filed. Either it would have to be plain error, which I guess is something which we are empowered to consider on this record, but an alternative would be that ineffective assistance can't be raised in this record? Well, ineffective assistance for failing to preserve issues for review generally gets the defendant plain error review. It's not something that entitles him to a new sentence in hearing or, in other contexts, a new trial for failing to preserve trial issues. Well, theoretically, that would be possible, though, wouldn't it? I'm sorry, go ahead. See, theoretically, it would be possible for a defendant to say, I wanted to have my sentence appealed. He didn't file a post-conviction or a motion to reconsider sentence. I wasn't able to have the trial court address it or have the appellate court review it. Plain error as opposed to regular error as opposed to plain error, so therefore this was ineffective assistance. That could be argued, couldn't it? Well, not necessarily. Because curriculum standard is a requirement of a reasonable probability of a different result, and a different result here would be a sentence lesser than the one he got. And so the last opportunity for appellate review without the issue of forfeiture and plain error is not something that appears to be within the ambit of Strickland's reasonable probability of a different result, unless this court would have a different result depending on whether it was forfeited or not. I'm not sure if that's Strickland prejudice. I'm not sure I've seen a case that says that that constitutes strict prejudice. Counsel, I apologize. I've been musing here, and I regret that I did because I think I'm going rather far afield. I took up more of your time than I should. No, actually, I think I've reached the end of my time. Well, the only last point I think I was making is that the trial court didn't reasonably determine, based on the defendant's criminal history, the fact that the firearm was loaded and the circumstances of this crime, that a defense-length imprisonment was necessary to protect the public, and this court should provide great deference to a trial court's sentencing determinations. And that's why this statement requests this court to affirm. And thank you. Thank you, counsel. Any rebuttals, Philippi? If this is a... suspected to be a drug obsess, and there's an apprehension agent with them, and they know the apprehension agent is interested in Javon Mays, and five people leave the house, how are the officers who announce that they're police, how do they know which guy is Javon Mays? And if the answer is they can't be sure, then wouldn't they command each of them to stop, and wouldn't their failure to stop be a refusal to obey an authorized act? Because it's reasonable for them... This is the guy the apprehension agent wants. Shouldn't we try to gather these guys up and find out which one's which? Now, they took Mays into custody almost immediately, though, right? They did, you're right. An officer testified at the trial that he apprehended Mays. That was the apprehension agent from DOC. Correct. And I want to go back to the premise of your question, which is flawed, actually, because there's no evidence that this was some sort of drug surveillance. Okay. It was an arrest warrant for Javon Mays. That's all the information that we have. Okay, then leave out what I said, which was in error. And it's just, that's the guy we want. How do we know who the guy we want is when they're running out, when they all leave, and they run away from us? Well, they had been, at that point, for two hours for Javon Mays. We don't know why. I mean, it's the state's burden, right? We don't know whether the officers had a description, a physical description of Mays or a photo or what, but there's a lot of officers here executing an arrest warrant. So presumably they had some sort of information about who they were looking for. But it's the state's burden, affirmative burden at the motion to suppress. Once the defendant's established the crime of basic case, there is a warrant to suppress. And the state didn't present any evidence that Mays, or that Wright resembled Mays or matched his physical description. There's nothing like that. That wasn't it. The officer Shweska said that he was just chasing. They were all chasing everyone. It was a round-them-all-up situation. At that point, you know, we didn't have any sort of particularized reason to think that Wright had committed any offense. There's no evidence that Mays had even committed an offense except for the arrest warrant, whatever the basis is for that. So presumably he had. But there's no evidence that Wright had committed an offense, and it was the state's affirmative burden at the motion to suppress. I wanted to also go back to the motion to suppress. What would we expect police officers to do in that instance? Well, they could do a consensual encounter, but that's not what happened here. They would have been happy if it was consensual, in the sense that these guys would have just stopped and looked at the officers and said, Okay, he's Jayvon Mays. Right, but they don't have a probable cause to arrest him. Being in the same company as someone who's the subject of an arrest warrant does not lead to probable cause for other people in his company. But we can't forget the steps here. And so the first step is whether or not they had a basis for a Terry stop, as the trial court pointed out. And so it's your position that five grown men exiting a house in single file, crouching down at night, going on to another property, that that shouldn't raise any suspicion on behalf of the officers? Not enough to get to the level of a Terry stop. That has to be a particularized suspicion. And there's nothing particularized about Wright. There's no suspicion that Wright is Jayvon Mays. You can run from the police. That's fine. But in this case, they're looking for Mays. And it's a state's burden to your side to justify this unlawful seizure. You had asked during my opening argument about what exactly Officer Schlesinger said. And he said that he did not see Russell throw anything when he fell. I also wanted to address Holdman briefly. And in Holdman, it was a lawful Terry stop. The defendant was in the car. There was traffic violations. So at that point, the police have lawful right to seize all the people in the car. The car then crashes. The people on foot flee. So you're fleeing an offense. And at this point, again, the police have a lawful right to stop them. So fleeing does constitute a violation of Section 311 because there's a lawful right to stop these people. And one final point is, in a sense, this court feels that there are factual details about how the Wright's criminal history was obtained that are not in the record. But this court can do as suggested by the state, and we may not have to go into it here. Counsel, you are out of time. And thank you. We'll take this matter under advisement and be in recess.